IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STORAGECRAFT TECHNOLOGY CORPORATION, a Utah corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>JAMES KIRBY, an individual, and JOHN DOES 1-10,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER AWARDING EXEMPLARY DAMAGES TO STORAGECRAFT TECHNOLOGY CORPORATION**<br><br>Case No. 2:08-cv-00921<br><br>Judge David Nuffer<br>Magistrate Judge Evelyn J. Furse |

This matter is before the Court pursuant to Plaintiff StorageCraft Technology Corporation's ("STC") request for an award of exemplary damages under the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-4(2); this Court's docket text order entered on August 10, 2012, requesting that each party submit a proposed form of reasoned order concerning an award of exemplary damages; and this Court's docket text order entered on September 17, 2012, after the preparation of trial transcripts had been completed, requesting that STC resubmit its proposed form of reasoned order with citations to the record.

The submissions of the parties, the evidence presented at trial and other documents and pleadings on file have been carefully considered before entry of this order.

## Standard for Award of Exemplary Damages under the UTSA

Section 13-24-4 of the Utah Uniform Trade Secrets Act (the "UTSA") provides in relevant part:

> (1) "[A] complainant is entitled to recover damages for misappropriation. . . .  In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.
>
> (2) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under Subsection (1).[1]

The UTSA is patterned after the Uniform Trade Secrets Act and "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of the chapter among states enacting it."[2]

This Court has previously analyzed the exemplary damage provision of the UTSA, noting that "the comment to Uniform Trade Secrets Act § 3(b), which was the model for Utah's exemplary damage provision, provides some guidance to the courts.  The authors of the commentary state that '[s]ection 3(b) . . . follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury, *compare* 35 U.S.C. Section 284 (1976).'"[3] As this Court recognized, "federal courts have articulated several factors to consider when determining whether to award exemplary damages.  Courts have focused most of their analyses on three factors, which are:  (1) whether the defendant deliberately copied the ideas or design of another; (2) whether the defendant held a good faith belief that the conduct did not infringe on

---

[1]   Utah Code Ann. § 13-24-4.
[2]   *Id*. § 13-24-9.
[3]   *ClearOne Commc'ns, Inc. v. Chiang*, No. 2:08-cv-37-TC, 2009 WL 1108800, at *4 (D. Utah Apr. 20, 2009) (quoting Uniform Trade Secrets Act § 3(b), cmt. (2005)).

another's rights; and (3) the defendant's behavior as a party to the litigation."[4]  Yet "additional factors have been identified and applied in decisions addressing whether to award exemplary damages:  (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's conduct; (7) remedial action taken by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct."[5]

The Court's discretion is limited where the question of willful and malicious misappropriation has already been decided by the jury.  "In such circumstances, a court may refuse to enhance damages only if it can do so without second guessing the jury or contradicting its findings."[6]  In this case, the jury unanimously awarded STC $2.92 million of the $4.5 million STC requested on its claim against Kirby for misappropriation of trade secrets under the UTSA. The jury likewise found that STC proved, by clear and convincing evidence, that Kirby's misappropriation was both willful and malicious.[7]  As recognized in *ClearOne*, "[s]pecial weight is placed on the jury's verdict.  The jury carefully weighed the evidence, and its factual findings (which were based on clear and convincing evidence) should be respected."[8]  Accordingly, an award of exemplary damages is appropriate where, as here, it is supported by the verdict and accomplishes "the public objective of punishing and deterring malicious conduct."[9]

---

[4]      *Id.* (citing *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826-27 (Fed. Cir. 1992) ("The paramount determination in deciding to grant [exemplary damages] and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances."), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995); *Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed. Cir. 1986); *Lam, Inc. v. Johns-Manville Corp.,* 668 F.2d 462, 475 (10th Cir.1982)).

[5]      *Id*. (citing *Read Corp.,* 970 F.2d at 826-27; *Bott,* 807 F.2d at 1572; *Lam, Inc.,* 668 F.2d at 475).

[6]      *BioCore, Inc. v. Khosrowshahi*, No. Civ.A. 98-2031-KHV, 2004 WL 303194, at *4 (D. Kan. Feb. 2, 2004); *Tate Access Floors, Inc. v. Maxcess Tech., Inc*., 222 F.3d 958, 972 (Fed. Cir. 2000) ("[W]e conclude that, in light of the jury's finding of willful infringement, the district court abused its discretion in refusing to increase damages or award attorney fees because it failed to articulate any reasons for refusing to make such awards."); *Applied Med. Res. Corp. v. U.S. Surgical Corp*., 967 F. Supp. 861, 863 (E.D. Va. 1997).

[7]      8/09/12 Special Verdict Form, Dkt. 274, at 3.

[8]      *ClearOne,* 2009 WL 1108800, at *6 (citing cases).

[9]      *Id.*

## Analysis of Exemplary Damages in this Case

At trial, STC presented the evidence described below with respect to the factors this Court identified in *ClearOne* regarding the award of exemplary damages:

**1.      Whether Kirby deliberately copied STC's VSnap source code.**

Because the jury found Kirby liable for willful and malicious trade secret misappropriation (as well as willful copyright infringement), the first *ClearOne* factor—deliberate copying—is established.  The evidence presented at trial on this point was compelling.

In an email dated October 18, 2004, Kirby acknowledged that he possessed STC intellectual property by telling STC that "a source code backup" and copies of "all critical data" belonging to STC were stored on his computer and on CDs and DVDs in his possession.[10]  Kirby resigned from STC just a few weeks later[11] and, to ensure the protection of STC's intellectual property, STC's attorney emailed Kirby regarding the return of all STC intellectual property in his possession.[12]  The return of this intellectual property was consistent with Kirby's resignation and with Kirby's September 3, 2004 Assignment and Transfer of Intellectual Property to STC.[13] In response to the email from STC's counsel, Kirby claimed that he had removed all such information from his laptop, and would likewise remove the same information from his desktop.[14]

Because STC did not receive evidence that STC's intellectual property had in fact been removed from Kirby's desktop or laptop,[15] never received the CDs and DVDs identified in

---

[10]      Pl.'s Ex. 57.
[11]      Pl.'s Ex. 60.
[12]      Pl.'s Ex. 46 at 1-3.
[13]      Pl.'s Ex. 41.
[14]      *Id.* at 1.
[15]      8/07/12 Trial Tr. at 21:8-11.

Kirby's October 18, 2004 email,[16] and was threatened by Kirby that any further contact by STC would be considered "harassment,"[17] STC filed its first lawsuit against Kirby (the "First Kirby Lawsuit").[18]

Kirby testified at this trial that he "scrubbed" (i.e., deleted) information from his computer upon his resignation from STC.[19]  Kirby claimed that upon resigning from STC, he performed word searches in Microsoft Outlook to search for and scrub all STC-related emails and information.[20]  In so doing, he testified that he believes he searched for the names of the Russian engineers, and is confident that he searched for the term "VSnap."[21]  He also conceded that Outlook searches are simple and can be performed "almost in a heartbeat" with search results obtained in just a few seconds.[22]  In addition, when questioned regarding the CDs and DVDs mentioned in his October 18, 2004 email, he testified that he "probably just didn't remember" that he had them,[23] even though he had copied STC's source code onto them just a few weeks before resigning from STC.[24]  His description of his searches and memory lapses is not credible.

The First Kirby Lawsuit was settled on October 19, 2005.[25]  In the Settlement Agreement, Kirby acknowledged that he had no rights to the VSnap source code and he expressly represented and warranted that he had returned to STC all STC-related information, including STC intellectual property and trade secrets; that he would not use or disclose such

---

[16]     *Id.* at 21:2-7.
[17]     Pl.'s Ex. 46 at 1.
[18]     Pl.'s Ex. 47.
[19]     8/08/12 Trial Tr. at 47:17-48:13, 51:9-53:19.
[20]     *Id.* at 47:17-49:15.
[21]     *Id.* at 49:16-53:19.
[22]     *Id.* at 49:4-15.
[23]     *Id.* at 57:12-15.
[24]     Pl.'s Exs. 57 and 60.
[25]     Pl.'s Ex. 48.

information; and that he would cooperate fully and reasonably with STC in protecting its trade secrets and intellectual property.[26]  These representations and warranties, however, were false.

Kirby admitted at trial that, at most, all he conducted was a cursory review of his hard copy and electronic files before signing the Settlement Agreement because he claimed that he had searched his files after resigning from STC and believed that he had eliminated all STC-related information at that time.[27]  His testimony that he conducted any search, however, is not credible in light of later admitted events.

In October 2006, at the request of NetJapan, Kirby agreed to meet with NetJapan's representative, David Crocker, whom Kirby had never met before.[28]  The meeting took place on December 11, 2006.[29]  By the time of the meeting, Kirby knew that NetJapan was actively working with lawyers to sue STC.[30]  In an email from Crocker to Kirby a week prior to the meeting, Crocker told Kirby that he was working with NetJapan's attorneys in Salt Lake City on a case against STC:

> Our conversation on the phone a couple weeks ago, when I was in SD with our friends from Japan, was very helpful.  Next week, I have to be in SLC again to work with our attorneys further on this case.  It is clear to me that NetJapan was egregiously taken advantage of by your successors at STC.  I would like to come to San Diego on Monday to meet with you personally so that I can follow up on a number of questions I have that would help us very much in this case. . . .  PS.  And thank you for recommending Burbidge and Mitchell.  I think they are very good advocates for us.[31]

Kirby also confirmed at trial that he had communicated with Crocker before they met and recommended Kirby's former lawyers at the law firm Burbidge, Mitchell & Gross ("BMG") to

---

[26]     *Id.* at ¶¶ 1, 2 and 4.
[27]     8/08/12 Trial Tr. at 62:11-22.
[28]     *Id.* at 70:18-71:13, 72:2-72:20, 75:23-76:4; Pl.'s Ex. 63.
[29]     Jury Instr. No. 8, Dkt. 273.
[30]     8/08/12 Trial Tr. at 76:5-77:8.
[31]     Pl.'s Ex. 74 at 3.

represent NetJapan in its anticipated lawsuit against STC.[32]  Kirby testified that he was "pretty confident" there would be a lawsuit.[33]

In the face of his knowledge of the adverse relationship between NetJapan and STC, and in complete derogation of his obligations in the Settlement Agreement, at the December 11, 2006 meeting between Crocker and Kirby, Kirby copied his entire backup PST file (i.e., a Microsoft Outlook email file) from his laptop onto a compact disc and gave the disc to Crocker.[34]  This file contained 100,000 emails Kirby sent and received while at STC.[35]  During his trial testimony, Kirby claimed that Crocker wanted a copy of Kirby's Settlement Agreement with STC, but that Kirby did not have time to locate his copy, so he downloaded his entire PST file for Crocker instead and told Crocker to look for the folder entitled "StorageCraft."[36]  While Kirby claimed he did not have time to find a copy of the Settlement Agreement, he did have time to accompany Crocker to lunch.[37]  The explanation that Kirby did not have time to locate the Settlement Agreement is not credible, given the ease with which he could have conducted a search for that term.  Further, the fact that the Settlement Agreement was sought should have reminded Kirby of his obligations under that agreement.

Both sides presented evidence at trial that Kirby was a highly talented software engineer and architect—a software professional so talented that he was one of only twelve Microsoft DDK MVPs in the world.[38]  Even so, Kirby claimed that the presence of the STC intellectual property on the Kirby Disc was a "simple oversight,"[39] an "accident."[40]

---

[32]     8/08/12 Trial Tr. at 77:9-14, 58:7-12.
[33]     *Id*. at 77:15-18.
[34]     Jury Instr. No. 8, Dkt. 273; 8/08/12 Trial Tr. at 81:3-8.
[35]     8/08/12 Trial Tr. at 50:20-25.
[36]     *Id*. at 81:9-25.
[37]     *Id*. at 82:1-12.
[38]     *E.g.*, 8/08/12 Trial Tr. at 18:24-19:14, 20:19-22:6; 8/09/12 Trial Tr. 10:24-12:3, 12:25-22:20, 41:12-42:15.
[39]     Pl.'s Ex. 50 at 5.
[40]     8/09/12 Trial Tr. at 56:1-8.

However, Scott Barnes, STC's Chief Technology Officer, carefully reviewed the remaining contents of the Kirby Disc received from David Crocker's attorney, and testified that his simple word searches identified thousands of pages of STC intellectual property in a matter of minutes.[41]  Specifically, Mr. Barnes conducted word searches on the contents of the disc using the last names of the three Russian engineers.[42]  Those searches turned up 4,891 documents with the term "Shatskih," 1,168 documents with the term "Batrankov," and 606 documents with the term "Borisov."[43]  Mr. Barnes also searched for the term "VSnap," which located 3,179 documents on the disc, comprising over 19,000 pages and including eleven full copies of the VSnap source code as well as numerous partial copies.[44]  Against that backdrop, Kirby's testimony at trial was not credible and evidenced a total lack of regard and indifference toward STC's rights.  When it was apparent that he had not conducted any effective search for STC source code, he only said: "I didn't want that stuff and obviously it was there.  I apologize for it. I am—I fall on my sword, you know, whatever, do what you have to do to me."[45]

Further, each copy of the VSnap source code contained multiple copyright notices.[46] In fact, Kirby testified that he put copyright notices on all copies of the VSnap source code during its development when he was emailing copies of the code back and forth with the Russian engineers.[47]  He claimed that he was "diligent" about doing so, and therefore Kirby clearly knew and understood that the source code was copyrighted and protected intellectual property.[48] Against that backdrop, he conceded that he could have searched his emails for "copyright" and "StorageCraft" to pull up all attachments containing STC source code with those copyright

---

[41]     *Id.* at 104:8-108:24; Pl.'s Exs. 31 and 33.
[42]     8/09/12 Trial Tr. at 106:2-4.
[43]     *Id.* at 107:11-18.
[44]     *Id.* at 106:7-8, 107:19-24, 108:9-109:25; Pl.'s Ex. 33.
[45]     *Id.* at 56:3-6.
[46]     8/09/12 Trial Tr. at 110:1-120:23; Pl.'s Exs. 3-5, 10-14, 16, 18-21, 23-30, 33 and 164.
[47]     8/08/12 Trial Tr. at 24:6-16.
[48]     *Id.* at 24:17-20.

notices, including the VSnap source code.[49]  He did not make such searches and admitted that he "could have been more diligent in checking it out and concede that."[50]

Kirby's trial testimony concerning the PST file was not at all credible.  Kirby testified that he knew he was giving Crocker his entire backup PST file, and knew that his "StorageCraft" folder in the PST file contained all of his attorney-client communications with Burbidge, Mitchell & Gross from STC's first lawsuit against him.[51]  Kirby also claimed that Crocker represented he would be delivering the Kirby Disc to STC the following day.[52]  When asked why Kirby did not simply tell Crocker to get the Settlement Agreement from STC given that he claims to have thought Crocker was on the STC board, Kirby's only explanation was that he "didn't think it through."[53]  Likewise, Kirby claimed that he was fine giving all of his attorney-client communications to Crocker, even though according to Kirby, Crocker intended to give those communications to Kirby's former adversary, STC.[54]  This makes no sense.  Finally, Kirby testified that he did absolutely nothing to check the contents of the disc that he gave to Crocker to determine if it contained STC's proprietary information.[55]  Specifically, Kirby testified that he did not perform any check because he was "not inclined to go to that much effort,"[56] even though he knew NetJapan was going to sue STC;[57] knew the Russians had developed and shared the VSnap source code with him over email;[58] knew that he had retained "thousands and thousands" of his emails with the Russians;[59] and knew that he had promised to help protect STC's

---

[49]     *Id*. at 64:14-65:1.
[50]     *Id*. at 63:21-23.
[51]     *Id*. at 81:3-83:20.
[52]     *Id*. at 83:8-10; Pl.'s Ex. 50 at 5.
[53]     *Id*. at 84:2-85:3.
[54]     *Id*. at 82:13-84:1.
[55]     *Id*. at 81:3-12.
[56]     *Id*. at 82:1-12.
[57]     *Id*. at 76:5-77:18.
[58]     *Id*. at 56:2-7; Pl.'s Exs. 12.  *See also* Pl.'s Exs. 1, 3-5, 7, 9-14, 16-31, 33 and 164.
[59]     8/08/12 Trial Tr. at 56:2-7.

intellectual property under the Settlement Agreement.[60]  In fact, Kirby subsequently agreed to put NetJapan in touch with Maxim Shatskih, the very Russian engineer who played a pivotal role in developing the VSnap source code with Kirby.[61]

Kirby also claimed that at the time of the meeting, he thought Crocker was an STC director and employee because Crocker had told him so.[62]  However, Crocker had resigned from the STC board almost a month earlier on November 18, 2006.  Kirby's claim of Crocker's alliance with STC is not credible in light of Kirby's knowledge of pending litigation between STC and NetJapan and Kirby's recommendation to Crocker of lawyers to assist NetJapan in that suit.  In addition, Crocker testified that he did not tell Kirby he was a board member of STC nor did he ever tell Kirby that he was employed by STC.[63]  Kirby admitted at the trial that he did nothing to verify Crocker's status on the STC board of directors prior to giving him the Kirby Disc.[64]

Further, in response to STC's attempt to identify every source of STC-related information that may remain in Kirby's possession, Kirby testified that he lost, wiped or dumped virtually every computer hard drive in his possession upon which STC information could have been found.[65]  Thus, neither STC nor the Court is able to test Kirby's representations that Kirby has now complied with his obligations, after having failed to rid himself of STC's intellectual

---

[60]      *Id*. at 61:23-62:5; Pl.'s Ex. 48 at ¶ 4.
[61]      8/08/12 Trial Tr. at 85:19-88:4; Pl.'s Exs. 75 and 76.
[62]      8/08/12 Trial Tr. at 74:22-25; *see* Pl.'s Ex. 50 at 5.
[63]      12/02/09 Deposition of David Crocker at 65:8-19, 69:17-70:17, 73:10-74:3, attached hereto as **Exhibit A**. *See also* Pl.'s Ex. 39 at ¶ 3.  The actual content of Mr. Crocker's deposition testimony that was read at trial is not reflected in the official trial transcript.  *See* 8/07/12 Trial Tr. at 161:23-24; 8/08/12 Trial Tr. at 6:6-7.  However, the foregoing cited pages and line numbers from his deposition, attached as Exhibit A, were in fact read at trial.
[64]      8/08/12 Trial Tr. at 79:8-81:2.
[65]      *Id*. at 102:11-104:20.  The obvious exception is the backup PST file that Kirby maintained and subsequently copied onto a disc for David Crocker, but neither STC nor the Court is able to confirm whether other exceptions exist.

property after resigning from STC,[66] after signing the Settlement Agreement representing and warranting to STC that he no longer possessed STC intellectual property,[67] and after giving the Kirby Disc to Crocker that contained multiple copies of the VSnap source code.[68]

Based on the foregoing, the first *ClearOne* factor—namely, Kirby's deliberate copying of the VSnap source code—was established at trial.

## 2. Whether Kirby held a good faith belief that his conduct did not infringe STC's rights.

The foregoing evidence likewise shows that Kirby did not have a good faith belief that his conduct did not infringe STC's rights in the VSnap source code.  Not only was Kirby found liable for breaching his representations and warranties in the parties' Settlement Agreement, but as noted above, the jury concluded that Kirby willfully and maliciously misappropriated STC's trade secret (i.e., the VSnap source code) and willfully infringed STC's copyright in the VSnap source code.[69]  The jury awarded STC $2.92 million in damages for breach of contract,[70] $2.92 million on STC's trade secret misappropriation claim,[71] and $100,000 in statutory damages on STC's copyright infringement claim,[72] having more than tripled the Copyright Act's statutory cap of $30,000 based upon a finding that Kirby acted willfully.[73]

Similar to *ClearOne*, the foregoing findings and damage awards show that Kirby knew his conduct infringed STC's rights and that the jury took a "dim view" of Kirby's "conduct and attitude."[74]  Further, given that the jury found Kirby willfully infringed STC's copyright and

---

[66]    *See, e.g.*, Pl.'s Exs. 31, 33, 46 and 57; 8/08/12 Trial Tr. at 33:13-34:17, 57:3-15.
[67]    Pl.'s Ex. 48 at ¶ 2.
[68]    8/09/12 Trial Tr. at 109:2-25; Pl.'s Exs. 31 and 33.
[69]    8/09/12 Special Verdict Form, Dkt. 274, at 2-3.
[70]    *Id*. at 1.
[71]    *Id*. at 3.
[72]    *Id*. at 2.
[73]    *See* 17 U.S.C. § 504(c)(1).
[74]    *ClearOne*, 2009 WL 1108800, at *5.

enhanced STC's award of statutory damages based upon that finding, it is clear that the jury rejected any "good faith" defense by Kirby.

Accordingly, the Court finds that Kirby did not hold a good faith belief that his conduct did not infringe STC's rights.

### 3. <u>Kirby's behavior as a party to the litigation</u>.

Kirby's conduct in the First Kirby Lawsuit, as well as the instant lawsuit, evidences a dismissive attitude toward his serious violations of law and breaches of his contractual obligations.  As a result, STC was forced to sue Kirby twice in a four-year period in order to protect its intellectual property.

In response to communications from STC's lawyers preceding the First Kirby Lawsuit, Kirby claimed that he had removed all STC intellectual property from his laptop and would do the same from his desktop when he returned to California.[75]  He then told STC's attorney that any further contact by STC would be considered harassment and that he would take appropriate legal action against STC.[76]  Because Kirby did not return the CDs and DVDs upon which he had copied STC's information (according to his October 18, 2004 email),[77] and because he did not provide STC with evidence that he had in fact removed all STC intellectual property from his hard drives,[78] STC brought the First Kirby Lawsuit.[79]  Only when Kirby represented and warranted that he had returned all STC intellectual property, had not and would not use or disclose it, and would cooperate with STC in protecting it, did STC agree to dismiss the First Kirby Lawsuit.[80]

---

[75]      Pl.'s Ex. 46 at 1.
[76]      *Id.*
[77]      8/07/12 Trial Tr. at 21:2-7.
[78]      *Id*. at 21:8-11.
[79]      Pl.'s Exs. 46 and 47.
[80]      Pl.'s Ex. 48 at ¶¶ 1, 2, 4, and 6.

In October 2008 after learning that Kirby gave STC's VSnap source code to NetJapan's representative despite his promises to the contrary, STC's attorneys again contacted Kirby.[81] Once again, Kirby claimed that he had scrubbed all of his email files to remove STC information, telling STC's attorney, "Rest assured, I have no STC proprietary information and do not want to have any STC proprietary information."[82]  He concluded his email with a quotation of the elements of a malicious prosecution claim,[83] implying that STC's inquiry regarding Kirby's dissemination of its intellectual property was improper and malicious, even though Kirby's representations about having deleted all STC intellectual property were false.[84]

Kirby also ignored STC's offers to have a third-party expert compare the NetJapan ActiveImage and VSnap source code,[85] and as described below, failed to produce any of his emails from his NetJapan account, despite this Court's order, which may have delineated his work on ActiveImage and its snapshot driver.[86]

### 4.    Kirby's financial condition.

Kirby testified at trial that he was paid $15,000 a month by NetJapan and then by Rectiphy, he is the second largest shareholder of Rectiphy Corporation, and he is the president and founder of Redux Beverages, LLC.[87]  Kirby did not present any evidence of financial hardship.[88]

---

[81]    Pl.'s Ex. 49.

[82]    Pl.'s Ex. 50 at 5-6.

[83]    *Id.* at 6.

[84]    *See, e.g.,* Pl.'s Exs. 1, 3-5, 7, 9-14, 16-31, 33 and 164.

[85]    Def.'s Ex. 224; 8/08/12 Trial Tr. at 98:20-100:3.

[86]    8/08/12 Trial Tr. at 97:6-98:25, 104:23-105:6, 105:17-106:15; Campbell Dep. at 124:9-17; 12/30/11 Mem. Decision & Order Granting in Part Mot. to Compel, Dkt. 180, at 5.

[87]    8/08/12 Trial Tr. at 15:22-24, 16:14-18, 93:9-14, 102:3-10.

[88]    Although additional evidence of Kirby's financial condition was not presented at trial, the Court notes that STC served discovery on Kirby pertaining to his financial condition, to which Kirby objected.  STC subsequently filed a motion to compel regarding that discovery, which this Court denied.  *See* 10/31/11 STC Mot. to Compel and Mem. in Supp., Dkt. 167 and 172; 12/30/11 Mem. Decision & Order Granting in Part Mot. to Compel, Dkt. 180, at 6.  STC then filed an objection to the Court's order as well as a motion to reconsider.  The objection was overruled and the motion denied.  *See* 1/13/12 STC Limited Obj. to Court's Mem. Decision & Order, Dkt. 185; 1/13/12 STC

**5.      The closeness of the case.**

This case was not close.  Before trial, the Court granted summary judgment to STC, establishing Kirby's liability for breach of contract and copyright infringement.[89]  In that same ruling, although summary judgment was not granted on STC's misappropriation claim, the Court described Kirby's defense as "weak at best."[90]  The Court's evaluation of STC's misappropriation claim was proved true when the jury returned a unanimous verdict, upon clear and convincing evidence, that Kirby had willfully and maliciously misappropriated STC's trade secrets and willfully infringed STC's copyright.[91]  The jury likewise awarded monetary damages on all three claims presented by STC at trial.[92]  Thus, there is no indication that the jury was persuaded by any of Kirby's defenses in this case.

**6.      The duration of Kirby's conduct.**

The duration of Kirby's conduct likewise supports an award of exemplary damages.  STC has twice had to litigate with Kirby regarding his unlawful retention and misappropriation of STC's trade secrets: once following Kirby's resignation from STC in 2004, and once again following STC's subsequent discovery in 2008 that Kirby had disclosed the VSnap source code to Crocker.[93]  Both times, Kirby responded with disdain and threats toward STC,[94] which forced STC to sue Kirby not once, but twice for having misappropriated STC's intellectual property.[95]

---

Mot. to Reconsider and Mem. in Supp., Dkt. 183 and 184; 3/23/12 Order Denying Mot. to Reconsider, Dkt. 192; 5/09/12 Order Overruling Pl.'s Obj., Dkt. 199.

[89]      7/14/11 Mem. Decision & Order, Dkt. 153, at 10-13.

[90]      *Id.* at 14.

[91]      8/09/12 Special Verdict Form, Dkt. 274, at 2-3.

[92]      *Id*. at 1-3.

[93]      Pl.'s Exs. 46, 49, and 50.

[94]      Pl.'s Ex. 46 at 1 (threatening harassment charge); Pl.'s Ex. 50 at 6 (quoting definition for "malicious prosecution").

[95]      Pl.'s Ex. 47; 11/26/08 Compl., Dkt. 2.

7.      **Remedial action taken by Kirby.**

Kirby did not present evidence at trial of any remedial action taken by him.  To the contrary, the evidence presented by STC established that each time Kirby was notified that he had improperly retained and disseminated STC's intellectual property, Kirby falsely claimed that he had eliminated all such information.[96]  As earlier stated, neither STC nor the Court is able to presently test Kirby's representations that he no longer has the STC source code, so there is no proof of any effective remedial action which compounds the problem created by Kirby's repeated false assurances.

It is also possible that rather than taking remedial action, Kirby has aggravated the consequences of his possession of STC's source code.  STC argued the possibility that Kirby used the VSnap source code in the ActiveImage Protector ("ActiveImage") backup software product released by NetJapan and, later, Rectiphy.  Robert Campbell of Leapfrog, who assisted in the initial development of ActiveImage, testified the ActiveImage product was experiencing "blue screens of death" in mid-May 2009.  In an effort to remediate this problem, Kirby was given full access to all of the Active Image driver code to assist in fixing it.[97]  In June 2009, NetJapan fired Leapfrog from the project but Kirby continued to work on the driver code.  Kirby apparently solved the "blue screen of death" issue.

Further, the initial version of ActiveImage released in March 2009, when Leapfrog was still involved, did not operate on the Windows 2000 operating system.  After Leapfrog was fired, and after Kirby's work, however, newer versions of ActiveImage were released that did operate on Windows 2000.  According to Mr. Campbell and Mr. Barnes, that means ActiveImage is not

---

[96]      *See* Pl.'s Exs. 46 and 50.
[97]      Pl.'s Ex. 93 at 2.

using a Microsoft-provided snapshot technology which STC argues means that STC snapshot technology is being used.

Emails from Kirby's NetJapan email account might have revealed his involvement in the development of ActiveImage, but Kirby did not produce any of those emails, even though he was ordered to do so by this Court.[98]  Kirby said he no longer had access to the account, but he conceded at trial that he was unable to access the account only because he forgot his password. And even though he communicates with NetJapan on a near daily basis, he never asked NetJapan to send him his password or otherwise restore his access to the account to respond to STC's discovery requests or this Court's order.

Because the ActiveImage source code was never produced for an independent third-party to compare to the VSnap source code, despite STC's request,[99] there was no clear evidence that STC's source code was used – or not used -- in the NetJapan ActiveImage product.

Thus, not only is remedial activity unproven, it is possible that Kirby has actually aggravated the damage from his misappropriation of STC's source code beyond that proven in the trial.

**8.     Kirby's motivation for harm.**

STC also presented compelling evidence at trial establishing that Kirby's deliberate copying of the Kirby Disc was motivated by a desire to harm STC.

On November 4, 2004, over a week before he admittedly "bailed" on the officers and directors at STC by submitting his resignation letter, Kirby sent an email to Ralph Shnelvar

---

[98]     12/30/11 Mem. Decision & Order Granting in Part Mot. to Compel, Dkt. 180, at 5.
[99]     Def.'s Ex. 224.

about forming a new company, developing snapshot technology and other replacements for STC products, and hiring away STC's Russian software engineers.[100]

Shortly after emailing Mr. Shnelvar, on November 14, 2004, just two days after submitting his written resignation from STC, Kirby sent a letter to Roland Whatcott at Symantec in which he suggested that several former PowerQuest[101] employees—who were then officers and directors of STC—were violating their non-compete agreements with PowerQuest.  In the email, Kirby admitted that he was motivated by revenge and suggested that Symantec may want to sue the STC officers and directors:  "If PowerQuest/Symantec intends to pursue possible action against these guys, it would need to happen before December 18th.  I am not suggesting such action be taken, but after having my company stolen from me, I wanted to let you know what is going on; there maybe a little revenge in what I am doing, but they took 7 years of my hard work and my IP and they have no bad feelings for doing such."[102]  Under cross examination at trial, however, Kirby conceded that he could not recall having read the non-competition agreements, but that the STC officers and directors who had those agreements with PowerQuest were mindful to make sure they were not in violation of them, and that he did not have any basis upon which to conclude that the STC officers and directors had not been working within the boundaries of those agreements.[103]  In other words, Kirby admitted that he had no basis in fact for prodding Symantec to sue STC's founders.[104]

Further, while negotiating the Settlement Agreement, Kirby and his wife sought to sell their 700,000 shares in STC.  Even though STC offered $700,000 to be paid over 12 months, the

---

[100]        Pl.'s Ex. 59.

[101]        By the time Kirby sent his email to Mr. Whatcott, PowerQuest had been acquired by Symantec.

[102]        Pl.'s Ex. 61.  Even though Kirby claimed in this email that STC officers and directors had "taken" his intellectual property, he admitted at trial that he fully understood and voluntarily signed the Assignment and Transfer of Intellectual Property, Pl.'s Ex. 41, which transferred all intellectual property owned by Kirby, his wife and his entity, StorageCraft, Inc., to the merged entity, STC.

[103]        8/09/12 Trial Tr. at 81:13-82:25.

[104]        *Id.*

Kirbys chose to sell their shares to NetJapan for $550,000.[105]  Kirby told NetJapan, "I would much rather you have the shares and not StorageCraft."[106]

The evidence at trial further established that Kirby affirmatively assisted STC's known adversary by meeting with Crocker at NetJapan's request,[107] providing the Kirby Disc to Crocker,[108] recommending attorneys for NetJapan to use in suing STC,[109] and attempting to arrange a meeting between NetJapan and STC's key Russian developer, Maxim Shatskih.[110] Kirby did all of this, notwithstanding his agreement in the Settlement Agreement that he would cooperate with STC to protect its intellectual property.[111]  Accordingly, the evidence presented at trial established that Kirby wanted to see harm come to STC.

### 9.    Whether Kirby attempted to conceal his misconduct.

STC also presented evidence of Kirby's attempt to conceal his misconduct.  Prior to both lawsuits, Kirby insisted that he did not possess any STC intellectual property,[112] but those claims have been proven false.[113]  And as described above, Kirby did not produce any emails from his NetJapan email account in this case, claiming that he did not have access to that account and that the emails belong to NetJapan.[114]  As he conceded at trial, however, the only reason he did not have access to the account is because he forgot his password, and in his near daily conversations with NetJapan, he did not ask NetJapan to provide the password or otherwise restore his access despite this Court's Order that he search his NetJapan email account.[115]  Significantly, emails

---

[105]     8/08/12 Trial Tr. at 68:20-69:8; Pl.'s Ex. 160 at 1.
[106]     Pl.'s Ex. 160 at 2.
[107]     8/08/12 Trial Tr. at 70:18-71:13, 72:2-72:20, 75:23-76:4; Pl.'s Ex. 63.
[108]     Jury Instr. No. 8, Dkt. 273; 8/08/12 Trial Tr. at 81:3-8.
[109]     8/08/12 Trial Tr. at 76:5-77:14, 58:7-12; Pl.'s Ex. 74 at 3.
[110]     8/08/12 Trial Tr. at 85:19-88:4; Pl.'s Exs. 75 and 76.
[111]     Pl.'s Ex. 48 at ¶ 4.
[112]     Pl.'s Exs. 46 and 50.
[113]     See, e.g., Pl.'s Exs. 1, 3-5, 7, 9-14, 16-31, 33 and 164.
[114]     8/08/12 Trial Tr. at 97:15-98:25, 104:23-105:6.
[115]     Id. at 105:17-106:15; 12/30/11 Mem. Decision & Order Granting in Part Mot. to Compel, Dkt. 180, at 5.

from that account would have shed light on Kirby's involvement in the development of NetJapan's ActiveImage and, in particular, his work on the snapshot driver that appears to perform in exactly the same way as ShadowProtect, which is based upon the VSnap source code.[116] And Kirby ignored STC's request to have an independent third-party compare the source code from ActiveImage to VSnap.[117]

**Conclusion**

Considering the foregoing factors, the evidence presented at trial, the totality of the circumstances and, importantly, the unanimous jury verdict in favor of STC, an award of exemplary damages is appropriate to accomplish the public objective of punishing and deterring malicious conduct.

**ORDER**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that STC is awarded exemplary damages under the UTSA in an amount equal to one-half the $2.92 million in damages awarded by the jury on STC's misappropriation claim, for a total of $1.46 million in exemplary damages.

Dated September 27, 2012.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[116]    8/08/12 Trial Tr. at 97:6-98:25; Campbell Dep. at 124:9-17; 8/09/12 Trial Tr. at 127:21-129:4, 165:16-166:12.

[117]    Def.'s Ex. 224; 8/08/12 Trial Tr. at 98:20-100:3.