IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STORAGECRAFT TECHNOLOGY CORPORATION, a Utah corporation,<br><br>                Plaintiff,<br><br>vs.<br><br>JAMES KIRBY, an individual, and JOHN DOES 1-10,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING STORAGECRAFT TECHNOLOGY CORPORATION'S MOTION FOR AN AWARD OF ITS ATTORNEYS' FEES AND NON-TAXABLE COSTS AND ORDER DIRECTING ENTRY OF JUDGMENT**<br><br>Case No. 2:08-cv-00921<br><br>Judge David Nuffer<br>Magistrate Judge Evelyn J. Furse |

      This matter is before the Court on StorageCraft Technology Corporation's ("STC") Motion for an Award of Its Attorneys' Fees and Costs[1] following the jury trial.

**I.    STC's Entitlement to an Award of Its Attorneys' Fees and Costs under the UTSA.**

      1.    Following the trial of this matter to a jury, the jury returned a unanimous verdict that STC had proved, by clear and convincing evidence, that Defendant James Kirby's ("Kirby") misappropriation of STC's VSnap source code was willful and malicious within the meaning of the Utah Uniform Trade Secrets Act ("UTSA").[2] The jury awarded STC $2.92 million in damages on its misappropriation claim.[3]

---

[1]    Docket no. 287, filed August 24, 2012.
[2]    8/09/12 Special Verdict Form, Dkt. 274, at 3.
[3]    *Id.*

2.     The UTSA provides that "[i]f willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party."[4]

3.     In awarding attorneys' fees under the Colorado Uniform Trade Secrets Act based on a default judgment, the district court in *Tax Services of America, Inc. v. Mitchell* observed that "determining whether an award of attorneys' fees is justified . . . the prevailing party should ordinarily recover its fees, unless circumstances would make an award of fees unjust."[5]

4.     Out-of-pocket costs are also recoverable under the UTSA. "There are two separate sources of authority courts use to award out-of-pocket expenses to a prevailing party."[6] Certain costs are commonly referred to as "taxable costs" and are awarded to a prevailing party as a matter of course pursuant to Federal Rule of Civil Procedure 54. On the other hand, expenses such as travel may be included in the concept of attorneys' fees as "incidental and necessary expenses incurred in furnishing effective and competent representation."[7]

5.     Under the UTSA, recoverable attorneys' fees include "the cost of retaining an attorney [such as] the expenses usually paid in an engagement agreement."[8] "A compensatory award of attorneys' fees should include 'out-of-pocket expenses . . . that a law firm normally

---

[4] Utah Code Ann. § 13-24-5.
[5] *Tax Servs. of Am., Inc. v. Mitchell,* No. 07-CV-00249-REB-KLM, 2009 WL 464679, *6 (D. Colo. Jan. 13, 2009), *report and recommendation adopted in part*, No. 07-CV-00249-REB-KLM, 2009 WL 464647 (D. Colo. Feb. 24, 2009), *judgment entered*, No. 07-CV-00249-REB-PAC, 2009 WL 1384139 (D. Colo. May 13, 2009) (citing *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997) (stating that "while § 1988(b) grants the district court 'discretion' in awarding fees, we have previously recognized that Congress intended this discretion to be narrow once the plaintiff meets the "prevailing party" inquiry)).
[6] *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).
[7] *Id.* (citation omitted); *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 (11th Cir. 1983) ("Reasonable attorneys' fees under the Act must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation.").
[8] *ClearOne Commc'ns, Inc. v. Chiang*, No. 2:07-cv-37-TC-DN, 2009 WL 5216856, *7 (D. Utah Dec. 30, 2009).

2

would bill to its client.'"[9]  These recoverable expenses include delivery, postage and shipping charges, travel expenses, as well as computer-aided legal research charges.[10]

6. In addition, an award of attorneys' fees under the UTSA is distinguishable from an award of exemplary damages, and serves a different purpose.[11]  Specifically, an attorneys' fees award shifts the burden and expense of the litigation when willful and malicious misappropriation is found, allowing the plaintiff to recover the full amount awarded by the jury.[12]  Without such a fee-shifting provision, the plaintiff would lose a large portion of the award to which the jury found the plaintiff entitled because she is contractually obligated to pay her counsel.  Thus, an award of attorneys' fees under the UTSA is compensatory, not punitive.[13]

7. Under the UTSA, the jury's finding of willful and malicious misappropriation on the Special Verdict Form entitles STC to an award of attorneys' fees and costs.  The Court also finds that the evidence presented at trial amply supports the jury's conclusion.

8. The evidence established that not only did Kirby falsely deny that he remained in possession of STC's intellectual property multiple times, but each time STC raised the issue with him, he threatened STC with harassment or malicious prosecution charges.  As a result, STC was forced to sue Kirby twice to protect its intellectual property.

9. To settle STC's first lawsuit against Kirby for misappropriation of its VSnap source code, Kirby represented and warranted in the parties' 2005 Settlement Agreement that he had returned all STC intellectual property, that he had not and would not use or disclose it, and that he would cooperate with STC to protect it.

---

[9] *Id.* (citation omitted); *see LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) ("Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.").
[10] *See Sun Media Sys., Inc. v. KDSM*, 587 F. Supp. 2d 1059, 1078-79 (S.D. Iowa 2008) (citing numerous authorities).
[11] *ClearOne Comm'cns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185-86 (10th Cir. 2012).
[12] *Id.* at 1185.
[13] *Id.*

10. The evidence presented at trial proved those promises to be false. Kirby not only retained multiple copies of the VSnap source code, but delivered them to STC's adversary, NetJapan. At the time, Kirby knew that NetJapan intended to sue STC and Kirby himself had recommended lawyers for NetJapan to hire for that purpose. He also agreed to put NetJapan in contact with STC's key Russian software engineer who had developed the VSnap source code.

11. Other evidence corroborates the finding that Kirby acted willfully and with malice. Admitting that he was motivated by revenge, Kirby also sought to encourage Symantec to sue STC's founders for breaches of their non-compete agreements. Kirby, however, conceded at trial that he did not have any basis in fact to believe that STC's founders had violated their agreements.

12. Kirby also sold his STC shares at a substantial discount to NetJapan, even though he had a higher offer from STC, because he wanted NetJapan to have the shares instead.

13. Although Kirby claimed at trial that his retention of STC's proprietary information was a mistake, he conceded that he could have performed a Microsoft Outlook word search that would have revealed "in a heartbeat" that he possessed over 19,000 pages of VSnap source code in his backup email file.

14. The foregoing are the actions of a disgruntled former officer motivated by malice and ill will to deliberately misappropriate STC's trade secrets.

15. STC was the prevailing party in this action. The jury unanimously awarded STC $2.92 million in damages on its misappropriation claim, as well as $2.92 million in damages on its breach of contract claim, and $100,000 in statutory damages on its copyright infringement claim.

16.     Accordingly, the Court concludes that, pursuant to Section 13-24-5 of the UTSA, STC is entitled to an award of its reasonable attorneys' fees and costs incurred in this action.

## II. STC's Entitlement to an Award of Its Attorneys' Fees and Costs under the Copyright Act.

17.     With respect to STC's copyright infringement claim, the jury likewise returned a unanimous verdict that STC had proved, by clear and convincing evidence, that Kirby's infringement of STC's copyright in the VSnap source code was willful within the meaning of the Copyright Act.[14]

18.     Under the Copyright Act, "the court in its discretion may allow the recovery of *full costs* by or against any party. . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."[15]

19.     "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable."[16]

20.     The Court finds that STC is the prevailing party on its copyright infringement claim. Not only did the jury conclude that Kirby's infringement was willful, but the jury awarded STC $100,000 in statutory damages for Kirby's infringement,[17] reflecting an enhancement of over three times the ordinary statutory cap of $30,000 as allowed under the Copyright Act based upon a finding of willfulness.[18]

21.     Accordingly, the Court has the discretion to award attorneys' fees and costs to STC under the Copyright Act. The United States Supreme Court has identified several

---

[14]    8/09/12 Special Verdict Form, Dkt. 274, at 2.
[15]    17 U.S.C. § 505 (emphasis added).
[16]    *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 886 F.2d 1545, 1556 (9th Cir. 1989).
[17]    8/09/12 Special Verdict Form, Dkt. 274, at 2.
[18]    17 U.S.C. § 504(c).

5

nonexclusive factors to be considered by courts in exercising that discretion, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[19]  Further, fees are designed to dissuade a defendant's disdain for copyright laws and to encourage the assertion of colorable copyright claims.[20]

22.     Based upon a consideration of the evidence in this case under the foregoing factors, the Court concludes that STC is entitled to an award of its reasonable attorneys' fees and full costs under Section 505 of the Copyright Act.

23.     First, STC's claims were not frivolous.  The jury awarded STC substantial damages on each of its claims at trial, including $100,000 in statutory damages under the Copyright Act, reflecting a significant enhancement for willful infringement.

24.     Second, STC presented compelling evidence at trial that Kirby's infringement was motivated by a desire to bring harm to STC, as described above.

25.     Third, Kirby's conduct and his "innocent mistake" defense were objectively unreasonable.  Kirby falsely represented to STC on more than one occasion that he had divested himself of all of STC's intellectual property.  To the contrary, STC proved at trial that Kirby remained in possession of over 19,000 pages of STC's VSnap source code, representing eleven full copies and many partial copies.  Although Kirby claimed to have kept the source code by mistake, the evidence at trial also established that if he had conducted the electronic word searches that he maintained he performed, he would have located all copies of STC's VSnap source code within minutes.  Kirby's trial testimony on this point was not credible.

---

[19]     *Fogarty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *see also Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1200-01 (10th Cir. 2005).

[20]     *Big Tree Enters., Ltd. v. Mabrey*, No. 93-4024-SAC, 1994 WL 191996, *8 (D. Kan. Apr. 15, 1994) (citing *Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991)), *aff'd,* 45 F.3d 439 (10th Cir. 1994).

26. In addition, before giving the Kirby Disc to David Crocker, a representative of NetJapan, Kirby testified at trial that he did not conduct any search for STC's intellectual property because he was "not inclined to go to that much effort." He further claimed that he did not have time to look for the specific document he said Crocker wanted, but conceded that he had time to accompany Crocker to lunch.

27. Finally, STC attempted to resolve its disputes with Kirby and ensure the protection of its intellectual property without litigation, but Kirby rejected STC's efforts, accusing STC of harassment. STC, therefore, has had to file two lawsuits against Kirby and incur significant sums in attorneys' fees and costs to protect its proprietary information.

28. The Court concludes, therefore, that an award of STC's attorneys' fees and costs under the Copyright Act would advance the public's interest in compensating plaintiffs who bring valid and successful copyright infringement lawsuits and in deterring future infringement by would-be infringers. Indeed, denying STC its attorneys' fees and costs would effectively penalize STC for exercising the only course open to it—namely, obtaining legal relief for Kirby's failures to do what he had promised.

### III.   The Reasonableness and Necessity of STC's Requested Attorneys' Fees and Costs.

29. The declarations and attached materials submitted by Heather M. Sneddon, H. Dickson Burton and Kurt Kappes, attorneys who provided services to STC in this action, show that the attorneys' fees and costs sought by STC are reasonable, were necessarily incurred in the prosecution of this action, and should be awarded.

30. In this evaluation, the Court has considered Kirby's reprehensible conduct as recited herein; his failure to disclose or otherwise produce relevant information in this case, which led to several motions to compel by STC; the expense of the litigation and the discovery

required to uncover the full extent of Kirby's misappropriation and infringement of STC's VSnap source code, including depositions of several out-of-state witnesses and two separate depositions of both Kirby and his wife in California; the tenacious defense presented at trial; and the significant jury verdict that was obtained by STC.

31.     The Court has also carefully considered the specific fees and costs requested by STC.  As set forth in the declaration of Ms. Sneddon, who served as second-chair to Thomas Karrenberg in representing STC in this matter and who devoted the most time to the case, Ms. Sneddon carefully reviewed each and every billing statement for Anderson & Karrenberg's attorneys' fees in this matter, analyzed each billing entry to determine whether recovery of those fees is reasonable and appropriate, and included only those fees in Exhibit 1 to her declaration.[21] Exhibit 1 contains detailed time entries concerning each task performed on each day by each timekeeper, and is taken directly from Anderson & Karrenberg's billing statements.  In particular, Ms. Sneddon eliminated all fees that directly related only to STC's breach of fiduciary duty and conversion claims, which were preempted by the UTSA, and reasonably reduced STC's billing entries associated with the parties' cross-motions for summary judgment and proposed jury instructions, voir dire, special verdict forms and the pretrial, given that those items related in part to STC's conversion and breach of fiduciary duty claims.

32.     Specifically, Ms. Sneddon applied a 10% discount to general summary judgment billing entries to account for time spent briefing STC's conversion claim, which was part of both parties' summary judgment motions.  This discount is generous, given that the main focus of the summary judgment motions were STC's breach of contract, trade secret misappropriation and copyright infringement claims, as well as the development of the substantial factual record in this

---

[21]     Ms. Sneddon's declaration also reflects the courtesy discounts that were afforded STC by Anderson & Karrenberg, applied as a percentage reduction on each applicable billing entry identified in Exhibit 1 to Ms. Sneddon's declaration.

matter, which the Court finds were intertwined and necessary for STC to prevail in this action on its compensable claims.

33.     Although the parties' 2005 Settlement Agreement does not contain an attorneys' fees provision, the establishment of Kirby's breach of that agreement was important (if not essential) for STC to prove Kirby's trade secret misappropriation—i.e., that at the time Kirby disclosed and used STC's VSnap source code, he knew or had reason to know that he was under a duty to maintain its secrecy per the terms of the Settlement Agreement.[22]  Kirby's breach of his representations and warranties in that agreement was likewise relevant to the jury's determination that Kirby willfully and malicious misappropriated STC's VSnap source code, and willfully infringed STC's copyright in that code.

34.     The 10% discount is also generous because it was applied by Ms. Sneddon to a number of billing entries that include additional tasks performed by STC's counsel for which STC is entitled to a full recovery.  Further, with respect to those billing entries that include a substantial amount of work related to STC's conversion claim, Ms. Sneddon either applied higher percentage discounts to those entries or removed them entirely, which the Court finds to be appropriate and reasonable.

35.     In addition, as set forth in Ms. Sneddon's declaration, she applied a 10% discount to general billing entries regarding jury instructions, voir dire, special verdict forms and the pretrial order to account for time spent preparing the limited portions of the foregoing that related to STC's conversion and breach of fiduciary duty claims.  The Court likewise finds these discounts to be reasonable and appropriate, given that most of the time spent preparing the foregoing does not appear to have related to STC's conversion and fiduciary duty claims.  Moreover, Ms. Sneddon applied the discount to numerous billing entries that included other

---

[22]     Utah Code Ann. § 13-24-2(2)((b)(ii)(B).

tasks for which STC would be entitled to a full recovery, and for those billing entries that related more significantly to STC's conversion and breach of fiduciary duty claims, she applied an appropriately higher discount or removed the entries.

36. The adjustments made and the careful segregation of fees by Sneddon's declaration make Kirby's block billing objection[23] inapplicable.

37. Based upon Ms. Sneddon's declaration, the Court also finds that the billing rates and amounts reflected for Anderson & Karrenberg's attorneys' fees are reasonable given prevailing rates in Salt Lake City, the specific needs of this case and the significant amount of damages awarded by the jury in favor of STC on each of its claims. Accordingly, the Court hereby awards STC its requested attorneys' fees from Anderson & Karrenberg in the amount of $580,104.12.

38. The non-taxable costs incurred by STC through Anderson & Karrenberg are reasonable, were necessary for this case, and should be awarded. As set forth in Ms. Sneddon's declaration, a significant amount of legal research was required concerning the requirements for STC's misappropriation and copyright infringement claims as well as for STC's damages, particularly with respect to a reasonable royalty for the VSnap source code under the UTSA. Indeed, the Court requested briefing from the parties on these issues both before and during the trial. The travel costs were necessary to take out-of-state depositions and attend the Leapfrog motion to compel hearing, and that the amount of the travel costs is reasonable. The standard delivery, postage and shipping charges are appropriate and, as with all of the foregoing costs, are of the type that are typically and customarily charged by law firms to their clients. Accordingly,

---

[23] Defendant's Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees at 5-6, docket no. 300, filed September 7, 2012.

the Court hereby awards STC its non-taxable costs through Anderson & Karrenberg in the amount of $10,162.38.

39. With respect to attorneys' fees incurred by STC for representation through TraskBritt, PC, STC submitted the declaration of Mr. Burton who initially represented STC in bringing this lawsuit. Mr. Burton reviewed all invoices his firm sent to STC and prepared Exhibit 1 to his declaration describing in detail those fees and costs, including those incurred to travel to and meet with James Kirby in California to discuss his retention of STC's intellectual property prior to filing the Complaint in this action, to prepare and file the Complaint and serve it on Kirby, and to begin reviewing documents and deposition transcripts from prior litigation that were relevant to this lawsuit and provide those to STC's successor counsel at Anderson & Karrenberg. The Court notes that, as set forth in Mr. Burton's declaration, he eliminated all fees incurred by STC to oppose Kirby's early motion to dismiss STC's claim for conversion, even though STC was successful on that motion. Mr. Burton's requested fees and non-taxable costs are reasonable and were necessary, and the Court hereby awards STC the attorneys' fees billed by TraskBritt in the amount of $11,775.00, as well as Mr. Burton's expenses in the amount of $1,265.96.

40. STC also submitted the declaration of Mr. Kappes from Greenberg Traurig LLP, who served as STC's local counsel in California with respect to STC's service of subpoenas on Leapfrog Software, Inc. ("Leapfrog") and the filing of STC's motion to compel concerning those subpoenas in the U.S. District Court for the Eastern District of California. Mr. Kappes' declaration describes the attorneys' fees and costs incurred by STC to retain his firm (and his prior firm, Seyfarth Shaw), to act as local counsel with respect to the Leapfrog subpoenas, the subsequent motion to compel filed in California federal court, and the briefing on that motion

given the opposition filed by NetJapan.  Those subpoenas and STC's motion to compel eventually led to this Court's decision to permit STC to pursue further discovery from Leapfrog, which resulted in Leapfrog's production of a number of relevant documents that were submitted as evidence at trial, as well as the deposition of Leapfrog's representative, Robert Campbell, which was read into evidence at trial.  Mr. Kappes' declaration states that the fees charged by his firms, and their rates, are reasonable and reflect those customarily charged in the Sacramento and San Francisco areas.  The attorneys' fees and costs billed by Mr. Kappes and his firms were necessary.  Accordingly, the Court awards STC the attorneys' fees billed by Mr. Kappes' firms in the amount of $11,892.00, as well as the non-taxable costs his firms incurred that were paid by STC in the amount of $82.60.

41. Finally, based upon STC's motion and the Court's review of the billing entries of STC's counsel, the Court concludes that beyond the allocations and reductions of STC's fees and costs that have been performed by Ms. Sneddon and Mr. Burton, no further allocation or reduction is necessary or warranted in this case given that all of STC's claims were based upon the same core set of facts and interrelated legal theories.

42. "Utah courts have recognized that a party need not allocate fees between compensable and non-compensable claims when the claims involve related legal theories and common sets of facts."[24]

43. The exhibits attached to the declarations of Ms. Sneddon, Mr. Burton and Mr. Kappes reveal that STC's counsel's work was predominantly dedicated to common issues of proof on all of its claims, including primarily, evidence of Kirby's retention and dissemination of STC's VSnap source code (both a trade secret and copyrighted work), as well as STC's damage

---

[24] *ClearOne Comm'cns, Inc. v. Biamp Sys.*, 653 F.3d at 1186 (citing *Wilde v. Wilde*, 35 P.3d 341, 349 (Utah Ct. App. 2001)).

claims under the UTSA and Copyright Act, for which STC may recover of its attorneys' fees and costs.

## ORDER

Accordingly, the Court hereby GRANTS STC's Motion for an Award of Its Attorneys' Fees and Costs[25] and,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that STC is awarded the following attorneys' fees and non-taxable costs:

| | | |
|---|---|---|
| **Anderson & Karrenberg** | Attorneys' Fees | $ 580,104.12 |
| | Non-Taxable Costs | $ 10,162.38 |
| **TraskBritt PC** | Attorneys' Fees | $ 11,775.00 |
| | Non-Taxable Costs | $ 1,265.96 |
| **Greenberg Traurig LLP / Seyfarth Shaw** | Attorneys' Fees | $ 11,892.00 |
| | Non-Taxable Costs | $ 82.60 |

**TOTAL:**          $ 615,282.06

---

[25] Docket no. 287, filed August 24, 2012.

## ORDER DIRECTING ENTRY OF JUDGMENT

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in this case in favor of Storagecraft Technology Corporation and against James Kirby in the following amounts:

    a.    $2.92 million in damages awarded by the jury on STC's misappropriation claim;[26]

    b.    $1.46 million in exemplary damages; and

    c.    $615,282.06 in reasonable attorneys' fees and non-taxable costs.

IT IS FURTHER ORDERED that the clerk of the court is directed to close this case.

Dated September 27, 2012.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[26] Consistent with the parties' Stipulation Regarding Double Recovery, docket no. 260, filed August 3, 2012, STC is "entitled to receive only the amount of the monetary damage award given by the jury on the claim that is the highest."